390 S.E.2d 210

**Frederick L. HADDAD, Sr.**

v.

**Michael E. CARYL, Commr.**

**No. 19090.**

Supreme Court of Appeals of West Virginia.

Feb. 21, 1990.

---

Louis S. Southworth, II, James R. Snyder, Jackson and Kelly, Charleston, for Frederick L. Haddad, Sr.

Roger W. Thompkins, Atty. Gen., John Ernest Shank, Deputy Atty. Gen., State Tax Dept., Charleston, for Michael E. Caryl.

NEELY, Chief Justice:

The taxpayer, Frederick L. Haddad, is a resident of Charleston, West Virginia. On 31 January 1983 the taxpayer sold 607,653 shares of stock in Hecks, Inc. As a result of this sale, the taxpayer realized capital gains in the amount of $3,121,330 for purposes of his West Virginia Personal Income Tax.

On 12 March 1983, the West Virginia Legislature passed Senate Bill 310 which, effective 1 April 1983, (1) raised the West Virginia Personal Income Tax rates applicable to the taxpayer by 3.4 percentage points and (2) added a temporary 12 percent surtax for individuals with West Virginia taxable income in excess of $10,000.

The taxpayer filed his 1983 West Virginia Personal Income Tax return and paid $377,578.00 in tax. In calculating his tax, the taxpayer divided all of his earned income into two categories: (1) The amount of income earned between 1 January 1983 and 31 March 1983; and (2) the amount of income earned between 1 April 1983 and 31 December 1983. The taxpayer then applied the rates applicable before 1 April 1983 to all income that was earned from January through March, 1983 (specifically the big capital gain), and he applied the new, higher tax rates to all of his income earned from April through December 1983. The taxes computed by this method were then added to arrive at the total tax liability of the taxpayer for 1983.

In November, 1984, the State Tax Commissioner issued a notice of tax due in a total amount of $136,036.03, comprised of tax of $104,928.03, interest of $4,876.00, and additions to tax of $26,232.00. A letter attached to the notice stated that the taxpayer's 1983 West Virginia Personal Income Tax had been recomputed, to take into account the higher tax rates and the surtax imposed by Senate Bill 310, in accordance with the statutory guidelines set forth in *W.Va.Code*, 11–21–4e [1983], renumbered as 11–21–4f [1987], which provides, in pertinent part, as follows:

If any rate of tax imposed by this article changes to become effective after the thirty-first day of December, of a calendar year, and if the taxable year includes the effective date of the change of rate (unless that date is the first day of the taxable year) then: (1) Tentative taxes shall be computed by applying the rate for the period before the effective date of the change of rate, and the rate for the period on and after such date, to the taxable income for the entire taxable year; and (2) the tax for such taxable

year shall be the sum of that proportion of each tentative tax which the number of months in each period bears to the number of months in the entire taxable year.

In June, 1985, the State Tax Commissioner issued a Notice of Assessment against the taxpayer in the amount of $140,750.47 and the taxpayer filed a timely Petition for Reassessment. The State Tax Commissioner denied the taxpayer's Petition for Reassessment and the taxpayer appealed to the Circuit Court of Kanawha County which affirmed the commissioner's decision. The taxpayer then appealed here.

The taxpayer feels aggrieved because, had he sold his stock before 1 January 1983, he would have been liable for none of the tax claimed in the assessment. The taxpayer testified that he had decided to sell his stock several months before the actual date of sale, but waited for the next scheduled Heck's, Inc., Board of Directors meeting after the end of 1982 because it would be the most convenient forum to announce his intention to sell. He explained to the commissioner that had he been given notice that the sale would be subject to a higher tax in 1983, he could have sold his stock in 1982.

The taxpayer contends that the circuit court erred in ruling that *W.Va.Code*, 11–21–4e [1983] requires the retroactive application of the higher tax rates and surtax enacted by Senate Bill 310, and that the circuit court erred in holding that the commissioner's retroactive application of the surtax and imposition of the additional tax imposed by Senate Bill 310 is not barred by *W.Va. Const.* article III, § 11.

## I.

■ The primary thrust of the taxpayer's argument is that when the legislature amended *W.Va.Code*, 11–21–4d [1970]—the statute governing proration when a tax rate is changed during a calendar year— the legislature made the proration statute ambiguous. Before the 1983 amendment the proration statute was *W.Va.Code*, 11–21–4d [1970], which provided as follows:

If any rate of tax imposed by this article changes to become effective *after the thirty-first day of December, one thousand nine hundred sixty-two,* and if the taxable year includes the effective date of the change of rate (unless that date is the first day of the taxable year) then: (1) Tentative taxes shall be computed by applying the rate for the period before the effective date of the change of rate, and the rate for the period on and after such date, to the taxable income for the entire taxable year; and (2) the tax for such taxable year shall be the sum of that proportion of each tentative tax which the number of days in each period bears to the number of days in the entire taxable year. [emphasis added]

Senate Bill 310 redesignated the proration statute as *W.Va.Code,* 11–21–4e [1983] and amended the earlier language as follows:

If any rate of the tax imposed by this article changes to become effective *after the thirty-first day of December, of a calendar year,* and if the taxable year includes the effective date of the change of rate (unless that date is the first day of the taxable year) then: (1) Tentative taxes shall be computed by applying the rate for the period before the effective date of the change of rate, and the rate for the period on or after such date, to the taxable income for the entire taxable year; and (2) the tax for such taxable year shall be the sum of that proportion of each tentative tax which the number of months in each period bears to the number of months in the entire taxable year. [emphasis added]

The taxpayer contends that we cannot legitimately infer an intent to make the new tax rates of Senate Bill 310 retroactive by a plain reading of *Code,* 11–21–4e [1983]. The taxpayer's argument is ingenious, and because it is difficult to follow, the argument is probably best set out in the taxpayer's counsel's own words as they appear in the taxpayer's brief:

Clearly, Section 4e does not require retroactive application of the rate increase and the new surtax enacted as part of Senate Bill 310. The plain wording of the amendment "on or after the thirty-first day of December, of a calendar year" *excludes* from retroactive application, any change in tax rates occurring before December thirty-first of a year. The 1983 changes to the tax law were not made effective on or after the thirty-first day of December of a calendar year, but rather a full eight months before that date.

Based solely on the language of Section 4e, it is impossible to determine what the statute means. Consider the following proposition which the Taxpayer submits cannot be rebutted: *Any effective date must be on or after December 31 of some calendar years and before December 31 of other calendar years.* Given this fact and the language of Section 4e the Taxpayer faced a paradox of interpretation. The Taxpayer then sought the advice of his counsel and accountant and, relying on his advisors, paid taxes as if the changes became effective on April 1, 1983, the effective date of Senate Bill 310 and the effective date of the rate changes as provided in *W.Va.Code,* § 11–21–4d(c), as amended.

The statute, as originally passed in 1963, precisely and unambiguously required the retroactive effect sought by the Commissioner in this case. If, as the Commissioner contended, this was the effect which the Legislature intended the statute to have after the 1983 amendment, then there was no reason to amend the statute at all!

All we can say to this argument is that the statute does not look ambiguous to us. We agree with the circuit court that both *W.Va.Code,* 11–21–4e [1983], and its predecessor, *W.Va.Code,* 11–21–4d [1970], have exactly the same effect: When a tax rate changes during the course of a calendar year, the effective rate of tax will be some combination of the old rates and the new rates in exact proportion to the amount of time during the calendar year that each rate is in effect.

■ Furthermore, we find that the surtax about which the taxpayer complains, which was enacted by *W.Va.Code,* 11–21–3

[1983], and was in effect from 1 April 1983 to 13 June 1985, explicitly applied to income earned in 1983 on a prorated basis under the provisions of *W.Va.Code*, 11–21–4e [1983]. In this regard *W.Va.Code*, 11–21–3(a)(4), provides:

§ 4–e [*Code* 11–21–4e] of this article, applicable to the effect of any rate changes during the taxable year shall be construed to include and to be applicable to the surtax imposed.

It is clear, then, that the surtax effective in 1983 was made applicable to 1983 taxes through *Code*, 11–21–4e [1983].

■ We agree with the taxpayer that the effect of the 1983 rate changes in the taxpayer's case is harsh, particularly because, had the taxpayer foreseen the 1983 rate increase, he could have avoided the new taxes entirely by selling his stock in 1982. Nonetheless, we are not persuaded that the assessment at issue here involves unconstitutional retroactivity. Initially, it should be pointed out that the taxpayer was aware of this State's general rate apportionment schedule as now set forth in *Code*, 11–21–4f [1987], and its predecessors. Furthermore, our apportionment statute closely mirrors § 15 of the *Internal Revenue Code* which establishes the same apportionment system at the federal level.[1]

Indeed, the taxpayer was aware that changes in tax rates are always possible when the legislature convenes; sometimes rates are raised and sometimes rates are lowered. It's a bet either way.

## II.

■ Also, we find no merit in the taxpayer's contention that *W.Va. Const.*, art. III, § 11, has been violated by the tax assessment at issue in this case. *W.Va. Const.*, art. III, § 11, in its entirety, provides as follows:

Political tests, requiring persons, as a prerequisite to the enjoyment of their civil and political rights, to purge themselves by their own oaths, of past alleged offences [sic] are repugnant to the principles of free government, and are cruel and oppressive. No religious or political test oath shall be required as a prerequisite or qualification to vote, serve as a juror, sue, plead, appeal, or pursue any profession or employment. Nor shall any person be deprived by law, of any right, or privilege, because of any act done prior to the passage of such law.

*W.Va. Const.*, art. III, § 11, was part of our 1872 *Constitution* which was ratified roughly seven years after the War Between the States. *W.Va. Const.*, art. III, § 11, was not intended to be a general prohibition against all retroactive legislation, but was a specific provision designed to eliminate legislatively enacted civil disabilities that penalized persons who served the Southern cause during the War Between the States.[2]

Two years before the ratification of the 1872 *Constitution*, which included art. III,

---

1. 26 U.S.C. 15 [1986] provides, in pertinent part:
    (a) GENERAL RULE—If any rate of tax imposed by this chapter changes and if the taxable year includes the effective date of the change (unless that date is the first day of the taxable year), then—
    (1) tentative taxes shall be computed by applying the rate for the period before the effective date of the change, and the rate for the period on and after such date, to the taxable income for the entire year; and
    (2) the tax for such taxable year shall be the sum of that proportion of each tentative tax which the number of days in each period bears to the number of days in the entire taxable year.
    ... (c) EFFECTIVE DATE OF CHANGE—For purposes of subsections (a) and (b)—
    (1) if the rate changes for taxable years 'beginning after' or 'ending after' a certain

date, the following day shall be considered the effective date of the change; and
    (2) if a rate changes for taxable years 'beginning on or after' a certain date, that date shall be considered the effective date of the change.

2. An example of the type of legislation that *W.Va. Const.*, art. III, § 11, was designed to prohibit can be found in an act of the legislature passed 14 February 1866, which provided:
    "Be it enacted by the legislature of West Virginia: No attorney at law shall be allowed to practice in any court, or before any justice or board of supervisors of this State after the passage of this act, until he shall take in the court in which he proposes to practice, in addition to the oath now required by law, the following oath: 'I (A.B.) do solemnly swear that I have not since the twentieth day of June, eighteen hundred and sixty-three, borne

§ 11, this Court, in *Ex parte Quarrier and Fitzhugh,* 4 W.Va. 210 (1870), affirmed the attorney's test oath, (see note 2, *supra* ), and held that requiring attorneys in this State to swear that they had not served in the Southern cause did not violate *ex post facto* principles. In *Quarrier,* one of the two applicants to practice law had been admitted to practice in West Virginia in 1866—before the oath statute was passed—and the other applicant to practice law had been granted a presidential pardon. We held as follows in syllabus points 1 and 2:

> 1. A party having qualified as an attorney before the passage of the attorneys' test oath act, of February 14th, 1866, did not require [sic] such a vested right in the office of attorney, as released him from being required to take the oath prescribed in that act.
>
> 2. The act of February 14th, 1866, known as the attorneys' test oath act, is not unconstitutional. It is not *ex post facto,* because *ex post facto* laws relate to penal and criminal proceedings, and not to civil proceedings which effect [sic] private rights retrospectively.

*Quarrier* followed the case of *Ex parte Hunter,* 2 W.Va. 122 (1867), in which lawyers who had been admitted to practice in Virginia before the War Between the States sought to be admitted to the practice of law in the new State of West Virginia. The question before the Court then was whether the 1866 act of the legislature requiring lawyers to swear that they had not taken up arms in the Southern cause was unconstitutional because it was either an *ex post facto* law or an impairment of an obligation of contract. We held that the constitutional prohibition against *ex post facto* laws applies only to criminal penalties and not to the denial of privileges, such as the right to practice law. In this regard we said:

> arms against the United States, nor against the State of West Virginia; that I have voluntarily given no aid or comfort to persons engaged in armed hostility thereto by countenancing, counselling or encouraging them in the same; that I have not sought, accepted nor attempted to exercise the functions of any office whatever, under any authority in hostil-

Not every law which operates prejudicial to an individual, can be said to be criminal, or punitive, and if retrospective, therefore, *"ex post facto."* For then every tax law would be punitive, for they would, in that sense, punish the tax payer by the amount extorted. So the authorizing a toll bridge by the side of an established ferry, which would injure the owner of the ferry, by the amount of tolls withdrawn by the greater facilities of the bridge.

2 W.Va. at 155–56.

■ Consequently, in light of the very specific *post-bellum* language in *W.Va. Const.* art. III, § 11, up until the very last sentence, we conclude that the language of the last sentence, "[n]or shall any person be deprived by law, of any right, or privilege, because of any act done prior to the passage of such law," was designed to prohibit the State from denying such privileges as the privilege to practice law as a penalty for some act—specifically service in the Southern cause—committed before the passage of the statute denying the right or privilege.

However, even if we were to consider the taxpayer's case to be within *W.Va. Const.* art. III, § 11, nonetheless, a statute providing for the apportionment of taxes in the event that personal income tax rates were changed during the calendar year and establishing the mechanism for such apportionment was on the books before the taxpayer sold his stock. Thus, there was adequate notice of the exact consequences of a change in rates during a calendar year.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

ity to the United States or to the State of West Virginia; that I have not yielded a voluntary support to any pretended government, authority, power or constitution within the United States, hostile or inimical thereto, and that I take this obligation freely, without any mental reservation or purpose of evasion." *Ex parte Hunter,* 2 W.Va. 122 [1867].